**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| **JULIO PACHECO and SLONE PACHECO,** Individually and on behalf of all others similarly situated,<br><br>　　　　**Plaintiffs,**<br><br>v.<br><br>**CAPITAL RESORTS GROUP, LLC, and CAPITAL VACATIONS CLUB, INC.,**<br><br>　　　　**Defendants.** | **Case No.:**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiffs MSgt Julio Pacheco and TSgt Slone Pacheco (collectively, "Plaintiffs"), individually, and on behalf of all others similarly situated, bring this Class Action Complaint against Defendants Capital Resorts Group, LLC, and Capital Vacations Club, Inc. (collectively referred to as "Capital Vacations Defendants" or "Defendants") and allege:

## INTRODUCTION

1. This is about active duty Military Servicemembers who are stuck in illegal and predatory timeshare loans. Complaint seeks to void Defendants' timeshare loans that violate the Military Lending Act ("MLA"), 10 U.S.C. § 987, *et seq*. The MLA was enacted to protect active duty servicemembers of the United States Armed Forces from an epidemic of predatory lending, as it endangers military readiness, security clearances, and servicemember morale and retention. The MLA is specifically designed to protect active duty servicemembers ("covered members")

and their spouses ("dependents") (collectively, "covered borrowers") as defined in the rules implementing the MLA.[1]

2.      Defendants sell vacations, or more accurately, the potential to book a future vacation through a complex system of vacation credits that are tied to its timeshare properties. As part of the transaction, Defendants trap servicemembers into contracts that can never be fully satisfied because of ever-increasing costs, taxes and maintenance fees. The price paid for the timeshare credits far exceeds any actual value received.

3.      Defendants' extensions of credit through the use of standard form timeshare loan agreements ("Agreements") violate the MLA. Specifically, the Defendants' Agreements violate § 987(a)(3) by unlawfully requiring covered members and their dependents to pay "interest" on credit extended through loan documents, which contain three provisions that are specifically prohibited by the MLA: (1) mandatory arbitration; (2) class action waiver; and (3) jury trial waiver. Exhibit A. *See* § 987(a)(3)) and § 987(e)(2) and (3).

4.      Defendants also fail to provide the required MLA disclosures to any covered members and/or their dependents.

5.      As a result of these MLA violations, the Plaintiffs and all class members have been damaged by the interest payments made, by not receiving any of the required disclosures, and the Agreements and loans between Defendants and Plaintiffs (and all members of the Class) are void from inception as a matter of law pursuant to § 987(f)(3).

---

[1] 32 C.F.R. 232.3(g).

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter pursuant to 10 U.S.C. § 987(f)(5)(E) and 28 U.S.C. § 1331.

7.      The Court also has jurisdiction under 28 U.S.C. § 1332(d), the Class Action Fairness Act, because this is a proposed class action, on behalf of a Class of over 100 Class Members, whose claims aggregate in an amount in controversy that exceeds five million dollars, and which includes members whose state citizenship is diverse from that of the Defendants.

8.      This Court has personal jurisdiction over Defendants because Defendants are headquartered in South Carolina, are subject to general jurisdiction here, and have engaged in much of the actions complained of herein in South Carolina at all times relevant to this Complaint.

9.      Venue is proper in this district pursuant to 10 U.S.C.A. § 987(f)(5)(E) and 28 U.S. § 1391, because Defendants reside in this District and a substantial part of the events and omissions giving rise to the claims occurred in this District.

10.      Plaintiffs have Article III standing because they suffered a concrete injury in that: (a) they have been "required" to pay "interest" and have paid interest on a monthly basis on timeshare loans in violation of § 987(a) because the loans contain terms that are prohibited by § 987(e) of the MLA;   (b) they suffered an informational injury by not receiving any written disclosure of the Military Annual Percentage Rate (MAPR) required by § 987(c); (c) they are contractually obligated to pay money in the future on a monthly and yearly basis under the timeshare loan Agreements that are "void from inception" because they contain terms prohibited by § 987(e); (d) they require declaratory and injunctive relief voiding the loans at issue, as well as precluding enforcement of the arbitration clause, class action ban, and jury trial waiver.

11.     Pursuant to 50 U.S.C. § 3936(a) of the Service Member's Civil Relief Act ("SCRA"), Congress tolled all limitation periods for servicemembers during their service, as follows: "The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the servicemember's heirs, executors, administrators, or assigns." Because Plaintiffs continue to be active duty servicemembers at the time of filing this action, the statute of limitations has not yet begun to run on any of the claims advanced herein.

12.     The MLA violations at issue and the related restitution/unjust enrichment stem from the monthly requirement to pay interest on loans which contain terms prohibited by the MLA. As a result, the § 987(a) violation occurs each time an interest payment is required. Thus, the statute begins again each month on these claims. Thus, even if the statute of limitations were to run on payments made by class members who have left the military and therefore do not have the tolling protection provided by the SCRA, the statute of limitations would not include interest payments made within the statutory period.

## **PARTIES**

13.     Plaintiff MSgt Julio Pacheco is a natural person and citizen of Arizona and at all times relevant was serving on active duty in the United States Air Force. At all times relevant hereto, MSgt Julio Pacheco was the spouse and dependent of TSgt Slone Pacheco.

14.     Plaintiff TSgt Slone Pacheco is a natural person and citizen of Arizona and at all times relevant was serving on active duty in the United States Air Force. At all times relevant hereto, TSgt Slone Pacheco was the spouse and dependent of MSgt Julio Pacheco.

15.     At all times material hereto, MSgt Julio Pacheco and TSgt Slone Pacheco have been "covered members" as defined by the MLA, 10 U.S.C. § 987(i)(1)(A), because they were both serving on active duty in the United States Armed Forces.

16.     MSgt Pacheco has served sixteen (16) years in the United States Air Force and currently maintains a security clearance.

17.     TSgt Pacheco has served fourteen (14) years in the United States Air Force and currently maintains a security clearance.

18.     The Defendants are each "creditors" that extended "consumer credit" to Plaintiffs as those terms are defined in 10 U.S.C. § 987(i)(6) and 32 C.F.R. § 232.3(h) & (i).

19.     Defendant Capital Resorts Group, LLC is a Delaware Corporation whose principal place of business is located at 2024 Corporate Centre Drive, Suite 101, Myrtle Beach, South Carolina 29577, and is listed as the "creditor" on the Plaintiffs' Agreements for the purchase of their timeshare interests. Capital Resorts Group, LLC runs its national timeshare business from its corporate offices in South Carolina, including the development of loan terms and disclosures and compliance with the MLA.

20.     Defendant Capital Vacations Club, Inc., is a Florida Not For Profit Corporation with its principal place of business at 2024 Corporate Centre Drive, Suite 101, Myrtle Beach, South Carolina 29577, and is listed as the "creditor" on the Plaintiffs' Agreements for the purchase of their timeshare interests.

21.     Although separate entities, both Defendants engage in uniform and common operations related to the ownership and operation of vacation ownership resorts and the marketing and sale of vacation ownership interests for Defendants' timeshare properties.

22.    Both Defendants share many of the same officers and directors, including the same principal place of business and mailing address. Both Defendants primarily operate their timeshare business, including corporate policies and procedures, from within South Carolina.

## THE MILITARY LENDING ACT, 10 U.S.C. § 987, *et seq.*

23.    The United States Congress enacted the Military Lending Act of 2006 to protect military servicemembers and their dependents from unfair or abusive loans, as military borrowers had been disproportionately victimized by predatory lending in the years preceding its enactment.

24.    The MLA directs the Department of Defense ("DoD") to prescribe regulations to carry out the MLA. Specifically, 32 C.F.R. Part 232 implements the MLA and contains limitations on and requirements for certain types of consumer credit extended to active duty servicemembers and their dependents (collectively termed "covered borrowers").

25.    Under the MLA regulations passed by the DoD, "consumer credit" is defined as: "Credit offered or extended to a covered borrower primarily for personal, family, or household purposes, and that is: (i) Subject to a finance charge; or (ii) Payable by a written agreement in more than four installments." 32 CFR § 232.3.

26.    Defendants' timeshare Agreements constitute an extension of "consumer credit," as defined under the MLA and 32 CFR § 232.3, because (1) Plaintiffs and the other Class Members were "covered members" and/or "dependents"; (2) their timeshare interests were primarily for personal, family, or household purposes; (3) their loans were subject to finance charges; and (4) their debt was payable in more than four installments.

27.    The MLA places a duty on "creditors" to determine whether a potential borrower is a "covered borrower." Creditors can utilize the free MLA Database, maintained by the DoD, to

make this determination. There is nothing in the MLA requiring Plaintiffs to identify themselves as "covered borrowers."

28.     Defendants made no attempt to determine if Plaintiffs or any class members were covered borrowers under the MLA. However, the Plaintiffs' military status was disclosed by Plaintiffs during the purchase process such that Defendants were aware of Plaintiffs' covered borrower status. Defendants also would have been made aware of Plaintiffs' covered borrower status through Plaintiffs' credit applications, which listed a branch of the United States Military as their current employer.

29.     Defendants have routinely and systematically ignored their obligations under the MLA to determine whether an individual is a covered borrower and to comply with the MLA.

30.     Upon information and belief, Defendants use standard form timeshare Agreements for all timeshare vacation credit loans extended during the Class Period, including those provided to covered members and their dependents.

31.     Defendants routinely violate the MLA in three distinct ways: (1) by requiring covered borrowers to pay interest on loans which contain terms which are prohibited by the MLA (violation of 10 U.S.C. § 987(a)); (2) by requiring covered borrowers to waive their legal right to participate in a class action or to have a jury trial of their claims (violation of 10 U.S.C. § 987(e)(2)); and (3) by requiring covered borrowers to submit to arbitration (violation of 10 U.S.C. § 987(e)(3)). Due to these separate MLA violations, the Defendants' loans are void from their inception.

32.     The MLA also requires specific disclosures to be made whenever a lender extends consumer credit to covered borrowers, including a statement of the MAPR applicable to the

extension of credit, which is a recalculated APR that attempts to represent more accurately the true cost of the indebtedness. CFR § 232.6(a).

33.     Plaintiffs' Agreements do not include any "statement of the MAPR" as required by 32 CFR § 232.6(a).

## FACTUAL ALLEGATIONS

### Plaintiffs Julio Pacheco and Slone Pacheco

34.     In July 2023, Plaintiff MSgt Julio Pacheco and his spouse, Plaintiff TSgt Slone Pacheco were on vacation in Orlando, Florida.

35.     The Plaintiffs booked a discounted room through the Defendants' resort. Upon arrival at the Defendants' resort, the Pachecos were told that they were required to attend a mandatory timeshare presentation to receive their discounted room rate.

36.     The Pachecos were subsequently subjected to a 4-hour high pressure sales pitch on Capital Vacations' timeshare vacation points program. During the presentation and in one-on-one conversations later, the Pachecos were informed by Capital Vacations' sales agent that they could rent out their timeshare to offset any monthly payments such that the end result would be a free vacation without any out-of-pocket monthly payments.

37.     The Pachecos were also informed by the Capital Vacations' sales representative that they could sell back their timeshare at any time.

38.     Ultimately, on July 30, 2023, the Pachecos entered into a timeshare contract with Capital Vacations to purchase 150,000 timeshare points. The purchase price of these points was $21,132.44 with a monthly payment of $262.49, plus a yearly maintenance cost of approximately $1,046.16. (Exhibit A, Pacheco Timeshare Contract). The monthly payment included interest.

39.     The Pachecos' Agreement with Defendants required them to pay a $208.95 Enrollment Fee. The Enrollment Fee was not included in the calculation of the annual percentage rate set forth on the loan documents. The Enrollment Fee would have been included in calculating the MAPR.

40.     The Pachecos' Agreement contains a finance charge.

41.     The Pachecos' Agreement includes a mandatory arbitration provision.

42.     The Pachecos' Agreement includes a class action waiver.

43.     The Pachecos' Agreement includes a jury trial waiver.

44.     The Pachecos' Agreement does not contain any of the written disclosures required by the MLA.

45.     In January, the Pachecos sought to cancel the sale. However, contrary to the representations made by the Capital Vacations' sales representative during the sales presentation, they were informed that they could not cancel the sale or "sell back" their timeshare.

46.     As of the date of this Complaint, the Pachecos paid over $4,800 to Capital Vacations in monthly principal and interest payments in connection with their July 2023 timeshare purchase and paid interest in at least one monthly payment under their Agreement with Defendants.

47.     Plaintiffs cannot afford to continue to make payments on their timeshare contract.

48.     Plaintiffs used their timeshare on two occasions, none of which required points: (1) January 2024, Plaintiffs attended Defendants' new owners workshop located in Massachusetts; (2) June 2024, Plaintiffs received a "bonus trip" from Defendants to stay at their locations in New York and Florida.

49.     Because of this indebtedness and detrimental credit reporting, Plaintiffs are forced to continue to make payments under this void loan to avoid losing their security clearances and

being involuntarily separated from the Air Force. Both Plaintiffs are very concerned that even though they cannot afford their timeshare, if they stop paying their timeshare loan it will result in the loss of Plaintiffs' security clearances and result in their termination from the military.

50.     The Plaintiffs' dampened borrowing power and the debt related to their timeshare Agreement with Defendants causes them stress, anxiety, embarrassment, annoyance, and lost credit opportunities.

51.     The amount of this debt and any subsequent default will likely negatively impact Plaintiffs' security clearances.

52.     The amount of this debt and any subsequent default will likely negatively impact Plaintiffs' military readiness.

53.     The amount of this debt and any subsequent default will likely negatively impact Plaintiffs' financial readiness.

54.     The amount of this debt and any subsequent default could cause Plaintiffs' to be involuntarily separated from the military.

55.     Under the Agreement, the Pachecos made a down payment of $4,435.44 and financed the remaining $16,905.95 over the course of ten years.

56.     Defendants' loan Agreement with the Pachecos required them to pay interest as defined by the MLA and requires them to make regular monthly payments.

57.     The Pachecos made a down payment, at least one monthly payment and paid interest on Defendants' timeshare loan Agreement since July 2023.

58.     To obtain financing, the Pachecos provided their name, employer information, date of birth, social security numbers, a military identification card, and other credit information to Defendants.

59.     The Agreement also required the Pachecos to pay maintenance fees in the first year of $1,046.16. In all subsequent years the Pachecos are required to pay maintenance fees of an undisclosed amount, forever. Even after the 10-year financing terms ended, the Pachecos would still be required to pay yearly maintenance fees.

60.     At the time of the filing of this Complaint, the Pachecos owe more than $10,000.00 on their loans extended by Defendants, with interest continuing to accrue at an annual interest rate of 14.00%. Each time the balance due on their timeshare contract accrues additional interest, Defendants violate the MLA's prohibition against requiring covered members and their dependents to "pay interest" on a loan containing terms which violate the MLA.

61.     Defendants also report the Pachecos' debt to credit reporting agencies as due and owing and regularly adds interest to the amount due, reflecting a higher amount each reporting period. The Pachecos' credit has been harmed as a result of reporting these debts by dampening their borrowing power and from their debt increasing over time.

62.     In multiple instances (February 2024 and August 2025), Plaintiffs were denied credit opportunities for interest rates on personal or auto loans due to the negative impact of Defendants' continued credit reporting of unlawful debt. For military servicemembers like Plaintiffs, the presence of such high income to debt ratio on their credit reports poses a direct and significant threat to their credit report, employment status, including the loss of security clearances and the risk of involuntary separation from their military service. The harm caused by these omissions is precisely the type of injury the MLA was enacted to prevent.

## CAPITAL VACATIONS DEFENDANTS

63.     The two Capital Vacations Defendants in this case are creditors for timeshare interests sold throughout the United States. Their entire marketing scheme is centered on the

selling of timeshare vacation points. Its website references that its advertising material is being used for the purpose of soliciting the sale of a "vacation ownership" plan. To be certain, Defendants are selling timeshare interests and are not engaged in the sale of real estate. The tab on the Defendants' website titled "About Us" explains the true nature of what is being sold in the timeshare transactions – vacation points, not an ownership interests in dwellings. *See* https://capitalvacations.com/about/.

64.    The Capital Vacations Defendants own and control over 200 different resorts and have timeshare agreements with nearly 400,000 timeshare owners.[2] The Defendants have sold and extended credit to purchase thousands of timeshares, including, upon information and belief, making timeshare loans to hundreds of military servicemembers and their spouses who are "covered borrowers" under the MLA.

65.    Upon information and belief, Defendants used standard-form timeshare contracts for all loans for timeshare interests extended at Defendants' timeshare resorts with no relevant variations for MLA covered borrowers. Further, the same standard form documents are used throughout the United States regardless of the location of the resort where the sale is made.

66.    Defendants Capital Resorts Group, LLC, and Capital Vacations Club, Inc., are both considered a "creditor" which provided "credit" to the Plaintiffs and members of the Class, as those terms are defined in 32 C.F.R. § 232.3(h) and (i) of the MLA.

67.    To obtain financing, the Plaintiffs provided their social security numbers, date of birth, their military identification cards, their place of employment, and/or other credit information to Defendants, placing Defendants on notice of their status as covered borrowers under the MLA.

---

[2] https://capitalvacations.com/management-services/

68.    Defendants knew or should have known of Plaintiffs status as active-duty military members of the Armed Forces and dependents, as the Plaintiffs provided Defendants with their credit information and Defendants verified the same before entering into the Agreements.

69.    Additionally, Defendants have uniformly and systematically failed to implement policies and procedures to ensure compliance with the MLA's mandatory disclosures and limitations as part of or in connection with their standard-form contracts. There is no mention of MLA protections appearing anywhere in any of the Agreements and none were provided to Plaintiffs and the Class.

70.    Worse yet for Plaintiffs and the class, there is no resale value to the timeshare credits sold by Defendants. While some limited vacation benefits may be available, the yearly and monthly costs of ownership far outweigh any limited benefits received by these predatory loans.

71.    Today, Defendants sell timeshare interests at nearly two hundred different resorts. Defendants have trapped thousands of covered borrowers in timeshare loans that violate the MLA.

## **CLASS ALLEGATIONS**

72.    Plaintiffs bring this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

73.    The proposed Class (hereinafter, the "Class") is to be represented by the Plaintiffs and is defined as:

> All persons who were active duty servicemembers and/or their spouses on the date of purchase and who financed the purchase of a timeshare interest from the Capital Resorts Group, LLC, within the five (5) years prior to the filing of the initial Complaint through the date the Court certifies the proposed Class.

74.    Expressly excluded from the Class are: (a) any Judge presiding over this action and members of their immediate families; (b) Defendants and any entity in which Defendants has a

controlling interest, or which has a controlling interest in Defendants, and their legal representatives, assigns and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

75.     The Class Period ("Class Period") is five (5) years prior to the filing of the initial Complaint.

76.     Plaintiffs reserve the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

## Rule 23 Criteria

77.     <u>Numerosity</u>. Because Defendants target military consumers as set forth above, and because Defendants have collectively sold timeshare interests to approximately 400,000 timeshares owners, Plaintiffs believe that there are at least 100 Class Members. Joinder of this many Class members would be impracticable. The exact number of Class members is unknown, as such information is in the exclusive control of Defendants. However, the number of Class members can be easily determined through Defendants' business records. Specifically, this can be determined by obtaining a list of persons who purchased and financed timeshare interests from Defendants during the Class Period and running those names through the DoD database created for this purpose. Upon information and belief, the Defendants maintain the information electronically that is required to generate such a list necessary to identify the members of the Class.

78.     <u>Commonality</u>. Common questions of law and fact affect the rights of each Class member and common relief by way of damages is sought for Plaintiffs and Class Members. Common questions of law and fact that affect the Class Members include, but are not limited to:

a.     Whether Defendants entered into standard-form timeshare contracts with active duty servicemembers and their dependents;

b.    Whether Defendants' timeshare contracts constitute an extension of consumer credit under the MLA;

c.    Whether Defendants violated 10 U.S.C. § 987(a) of the MLA by requiring covered members to pay interest though their Timeshare Loan Agreements ("Agreement") which include terms prohibited by the MLA including: (1) mandatory arbitration; (2) class action waiver; and (3) jury trial waiver;

d.    Whether Defendants violated 10 U.S.C. § 987(e) of the MLA by including: (1) mandatory arbitration; (2) class action waiver; and (3) jury trial waiver as terms in their Agreements;

e.    Whether Defendants provide the written MAPR disclosure to Plaintiffs and the class as required by 10 U.S.C. § 987(c).

f.    Whether Defendants' standard form timeshare Agreements extended to Plaintiffs and the Class are void from inception as a result of these MLA violations, pursuant to 10 U.S.C. § 987(f)(3); and

g.    The remedies and damages to which Plaintiffs and the Class are entitled to under 10 U.S.C. § 987(f)(5).

79.    <u>Typicality</u>. The claims and defenses of the representative Plaintiffs are typical of the claims and defenses of the Class because they are covered borrowers under the MLA like the rest of the Class and their claims arise under the same legal theories and out of a common course of conduct by Defendants. The extension of credit to purchase Plaintiffs' timeshare interest from Defendants was done through the use of standardized Agreements that are also used by Defendants to sell timeshare interests to the other members of the Class. None of these standardized Agreements contain the required "Statement of MAPR" as required by the MLA. Similarly,

15

Plaintiffs and all class members were required to pay interest and did pay interest in violation of 10 U.S.C. § 987(a). Defendants' standardized Agreements also all contain a mandatory arbitration clause, a class action waiver, and a jury trial waiver, which are all prohibited by 10 U.S.C. § 987(e) of the MLA. Due to these MLA violations, these Agreements are "void from inception" and Plaintiffs are due restitution for having made payments on loans which are deemed to have never existed. Plaintiffs have therefore suffered the same type and in the same manner as the Class they seek to represent. There is nothing peculiar about Plaintiffs' claims when compared to those of the other members of the Class.

80.     <u>Adequacy</u>. The representative Plaintiffs will fairly and adequately assert and protect the interests of the Class. As active duty military servicemembers and their dependents, Plaintiffs are all "covered borrowers" under section 987(c)(A) of the MLA. Plaintiffs have no conflict of interest with the Class Members they seek to represent. They have hired attorneys who likewise have no conflicts of interest with the Class and who are experienced in prosecuting class actions, consumer protection law claims and MLA claims in particular, and will adequately represent the interests of the Class.

81.     <u>Predominance and Superiority</u>. A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

a.      The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members. The statutory claims under the MLA require a simple identification of those consumers who were also covered borrowers at the time of their transaction, which can be accomplished by using the MLA database maintained by the DoD;

b.  Prosecution of a separate action by each individual member of the Class would create a risk of inconsistent and varying adjudications against Defendants when confronted with incompatible standards of conduct;

c.  Most covered borrowers are unaware that their loans violate the MLA and are void under the MLA;

d.  Defendants reside in this District and violated the MLA within this District, making this Court appropriate for the litigation of the claims of the entire Class;

e.  There are very few attorneys in the United States with any expertise or experience in this nascent area of law making it nearly impossible for Class members to find adequate representation; and

f.  The novelty of these claims and the fact that individual damages may be modest in comparison to the time required to litigate the case make a Class action the only viable procedural method of redress in which Class members can, as a practical matter, recover for the conduct at issue. In fact, the vast majority of Class Members are not even aware that they have a claim.

82.     Defendants have acted and refused to act on grounds generally applicable to the Class, thereby making declaratory relief and corresponding final injunctive relief under Rule 23(b)(2) appropriate with respect to the Class as a whole.

83.     The MLA explicitly states that it is "unlawful for any creditor to extend consumer credit to a covered borrower" when that credit agreement requires the borrower to waive any legal recourse under state or federal law. 10 U.S.C. § 987(e)(2). The right to bring a class action is not merely a procedural mechanism; it is an essential avenue of legal recourse, especially for servicemembers subject to systemic violations of lending laws.

84.    Additionally, Defendants' timeshare loan Agreements are standardized for each member of the proposed Class, meaning that all Class Members were subjected to the same unlawful terms and suffered the same types of harm arising from materially identical timeshare purchase agreements. The MLA's protections are not contingent on individual reliance but on whether the creditor imposed prohibited terms. Because Defendants' MLA violations are uniform, the Class mechanism is the only practical way to vindicate these servicemembers' rights.

85.    Plaintiffs and the Class are entitled to a declaration that their contracts are void and Defendants should be enjoined from attempting to collect any monies pursuant to them or to enforce them in any way.

## COUNT I
### Violation of the Military Lending Act 10 U.S.C. § 987, et seq.
### On Behalf of Plaintiffs and the Class

86.    Plaintiffs and the Class repeat and re-allege the allegations in paragraphs 1 through 85 as if set forth herein in full.

87.    Plaintiffs MSgt Julio Pacheco and TSgt Slone Pacheco were serving as an active-duty member of the United States Air Force at the time of entering into the timeshare contract with Defendants.

88.    Plaintiffs are each "covered borrowers," "covered members" and "dependents" as those terms are defined by 32 C.F.R. § 232.3(g).

89.    Plaintiffs were serving as active duty servicemembers covered by the MLA on the date that Plaintiffs' timeshare contract was extended by the Defendants. Plaintiffs continue to serve today and as a result of their active duty status, the statute of limitations has not started to run on any of the claims asserted herein.

90.     Members of the putative Class are also those individuals who were active-duty servicemembers and/or their spouses on the date they executed a timeshare purchase contract extended by the Defendants.

91.     Each Defendant is a "creditor" that provided "consumer credit" to Plaintiffs and the Class under the timeshare purchase agreements as those terms are defined in 32 C.F.R. §232.3(f), (h) & (i).

92.     The MLA § 987(a) states that a creditor, like Defendants, "shall not require the member or dependent to pay interest with respect to the extension of such credit" that contains terms prohibited by the MLA." 10 U.S.C. § 987(a).

93.     The MLA defines "interest" to include:

> all cost elements associated with the extension of credit, including fees, service charges, renewal charges, credit insurance premiums, any ancillary product sold with any extension of credit to a servicemember or servicemember's dependent, as applicable, and any other charge or premium with respect to the extension of consumer credit.

10 U.S.C. § 987(i)(3).

94.     Section 987(e)(2) and (3) of the MLA prohibits mandatory arbitration clauses, class action waivers, and jury trial waivers in extensions of consumer credit by creditors like Defendants to covered borrowers like Plaintiffs. 10 U.S.C. § 987(e)(2)(3):

> It shall be unlawful for any creditor to extend consumer credit to a covered member or a dependent of such a member with respect to which—
>
> (2) the borrower is required to waive the borrower's right to legal recourse under any otherwise applicable provision of State or Federal law, including any provision of the Servicemembers Civil Relief Act (50 U.S.C. 3901 et seq.);
>
> 3) the creditor requires the borrower to submit to arbitration or imposes onerous legal notice provisions in the case of a dispute;

**BINDING ARBITRATION**

95.    10 U.S.C. § 987(e)(3) of the MLA prohibits creditors like Defendants from requiring covered borrowers like the Plaintiffs to submit to mandatory arbitration.

96.    Defendants' standard-form timeshare Agreements include binding mandatory arbitration provisions with no exception for covered borrowers under the MLA, including the Agreement entered into with Plaintiffs.

97.    Defendants' timeshare Agreement with the Pacheco's contains a binding arbitration provision. Exhibit A, pp. 10, 15-16.

98.    Thus, Defendants violate MLA § 987(a) by requiring covered borrowers to pay interest on its timeshare loans which contain a prohibited arbitration clause.

99.    Plaintiffs and all Class members who were required to and did pay interest on timeshare loan Agreements which contained prohibited arbitration clauses were damaged equal to the amount of interest payments made in violation of 10 U.S.C. § 987(a).

100.    As a result of unlawfully requiring covered borrowers like the Plaintiffs and the Class to enter into timeshare Agreements containing mandatory arbitration provisions in violation of 10 U.S.C. § 987(e)(3), the timeshare Agreements that Defendants extended to the Plaintiffs and the Class are "void from inception" pursuant to 10 U.S.C. § 987(f)(3) and 32 CFR § 232.9(c).

**CLASS ACTION AND JURY TRIAL WAIVER**

101.    The Defendants' second and third MLA violations arise out of 10 U.S.C. § 987(e)(2), as it prohibits creditors from requiring covered borrowers to "waive the borrower's right to legal recourse under any otherwise applicable provision of State or Federal law."

102.    Defendants' timeshare Agreement with the Pacheco's contains a class action waiver provision. Exhibit A, pp. 10, 15-16.

103.    The right to participate in a class action stems from the Rules of Civil Procedure under both State and Federal law, the Servicemembers Civil Relief Act, and the right to bring this class action lawsuit under the MLA.

104.    A 2006 DoD Report supporting the MLA explains why these limitations are critical:

> Service members should maintain full legal recourse against unscrupulous lenders. Loan contracts to Service members should not include mandatory arbitration clauses or onerous notice provisions, and should not require the Service member to waive his or her right of recourse **such as the right to participate in a plaintiff class**. Waiver is not a matter of "choice" in take-it-or leave-it contracts of adhesion. To the contrary, Service members should be given the opportunity to hold lenders accountable for situations where they have violated their rights.

105.    Department of Defense, Report on Predatory Lending Practice Directed at Members of the Armed Forces and Their Dependents (Aug. 9, 2006), pg. 7 (emphasis added). Thus, Defendants violate MLA § 987(a) by requiring covered borrowers to pay interest on its timeshare loans which contain class action waivers and/or jury trial waivers which are prohibited by § 987(e)(2).

106.    Plaintiffs and all Class members who were required to and did pay interest on timeshare loan Agreements which contained prohibited class action waivers and jury trial waivers were damaged equal to the amount of interest payments made in violation of 10 U.S.C. § 987(a).

107.    As a result of unlawfully requiring covered borrowers to waive their right to a jury trial or to participate in any class action lawsuit also constitutes a separate violation of 10 U.S.C. § 987(e)(2) of the MLA, which in turn renders the timeshare Agreements of Plaintiffs and the Class "void from inception" pursuant to 10 U.S.C. § 987(f)(3) and 32 CFR § 232.9(c).

108.    Defendants' timeshare Agreement with the Pacheco's contains a class ban and jury trial waiver provision. Exhibit A, pp. 10, 15-16.

## NO STATEMENT OF THE MAPR

109.    10 U.S.C. § 987 (c)((1)(A) and 32 C.F.R. § 232.6 makes mandatory the following

disclosures in all loans to covered borrowers like Plaintiffs:

(a) Required information. With respect to any extension of consumer credit (including any consumer credit originated or extended through the internet) to a covered borrower, a creditor shall provide to the covered borrower the following information before or at the time the borrower becomes obligated on the transaction or establishes an account for the consumer credit:

   (1) A statement of the MAPR applicable to the extension of consumer credit;

   (2) Any disclosure required by Regulation Z, which shall be provided only in accordance with the requirements of Regulation Z that apply to that disclosure; and

   (3) A clear description of the payment obligation of the covered borrower, as applicable. A payment schedule (in the case of closed-end credit) or account-opening disclosure (in the case of open-end credit) provided pursuant to paragraph (a)(2) of this section satisfies this requirement.
….

(c) Statement of the MAPR—

(1) In general. A creditor may satisfy the requirement of paragraph (a)(1) of this section by describing the charges the creditor may impose, in accordance with this part and subject to the terms and conditions of the agreement, relating to the consumer credit to calculate the MAPR. Paragraph (a)(1) of this section shall not be construed as requiring a creditor to describe the MAPR as a numerical value or to describe the total dollar amount of all charges in the MAPR that apply to the extension of consumer credit.

(2) Method of providing a statement regarding the MAPR. A creditor may include a statement of the MAPR applicable to the consumer credit in the agreement with the covered borrower involving the consumer credit transaction. Paragraph (a)(1) of this section shall not be construed as requiring a creditor to include a statement of the MAPR applicable to an extension of consumer credit in any advertisement relating to the credit.

(3) Model statement. A statement substantially similar to the following statement may be used for the purpose of paragraph (a)(1) of this section: "Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as

applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account)."

110.    Defendants' standard-form timeshare Agreements and closing disclosure statements used in their timeshare sales to Plaintiffs and the Class do not provide any "Statement of the MAPR" either in the form of a description of the charges necessary to calculate the MAPR or through the inclusion of the MLA Model Statement.

111.    Pursuant to 32 C.F.R. § 232.9(c), "any credit agreement, promissory note, or other contract with a covered borrower" that fails to comply with any provision of 10 U.S.C. § 987 or its implementing regulations, including its MAPR disclosure requirement, "is void from inception of the contract."

112.    Because Defendants' timeshare contracts and promissory notes do not contain the required "statement of the MAPR" as required by the MLA, Plaintiffs and all class members suffered an informational injury by not receiving any MAPR disclosure at all, and as a result all loans are "void from inception."

113.    Each of Defendants' MLA violations are separate and independent under the MLA.

114.    Each time that Plaintiffs paid money on Defendants' void loan constitutes a separate and independent violation under the MLA and damages caused by Defendants' unlawful MLA conduct.

115.    Each and every time that Defendants assessed monthly interest on its void loans to Plaintiffs and the Class restarts the statute of limitations under the MLA.

116.    The remedy to cure Defendants' violations of the MLA is awarding damages for all interest paid and by voiding the Agreements of Plaintiffs and the Class "from inception," pursuant to 10 U.S.C. § 987(f)(3) and 32 CFR § 232.9(c).

117.    10 U.S.C. § 987(f)(5) and 32 CFR § 232.9(e)(1) further provide that Plaintiffs and each member of the Class are entitled to actual damage sustained but not less than $500 for each separate violation of the MLA, plus appropriate punitive damages, injunctive or declaratory relief, and any other available relief.

118.    The Defendants are also liable for Plaintiffs' attorneys' fees and costs pursuant to 32 CFR § 232.9(e)(2) and 10 U.S.C. § 987(f)(5)(B).

**COUNT II**
**Restitution/Unjust Enrichment**
**On Behalf of Plaintiffs and the Class**

119.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 85 as if set forth herein.

120.    As set forth above, Defendants violated the MLA in no less than four separate manners. The MLA's "Penalties and Remedies" subsection provides that extensions of credit which violate the MLA are "void from the inception of such contract." 10 U.S.C. § 987(f)(3).

121.    Under South Carolina common law, parties who benefit from contracts that are void from inception or "void *ab initio*" because they violate public policy, or in this case violate the MLA and corresponding federal regulations, should not be able to retain any of the benefits they received as a result of any wrongdoing.

122.    The United States Supreme Court has held that "when Congress declare[s] in [a statute] that certain contracts are void, it intend[s] that the customary legal incidents of voidness follow, including the availability of a suit for rescission or for an injunction against continued

operation of the contract, and for restitution." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, at 19 (1979).

123.    While the MLA violations set forth in Count I include a claim for damages in the form of interest payments made in violation of 10 U.S.C. § 987(a) and render the contracts void from inception, the amounts paid by Plaintiffs and the Class over and above the amounts paid as interest are recoverable as restitution/unjust enrichment.

124.    The Plaintiffs and the Class conferred a benefit on Defendants by paying it under the illegal and void Agreements.

125.    Defendants voluntarily accepted and retained the benefits conferred on it by retaining the payments made under illegal and void agreements by Plaintiffs and the Class.

126.    Under such circumstances, Defendants should not be allowed to retain any of the amounts paid on Agreements that never existed because they have been deemed "void from inception."

127.    The MLA does not provide for any set off or retention of such amounts by Defendants who violate the MLA and after the loans have been voided. Plaintiffs and the Class are due to receive restitution in the form of all payments made to Defendants over and above interest paid in connection with timeshare loans declared void for violating the MLA.

**REQUESTED RELIEF**

Plaintiffs respectfully request that the Court enter order and judgment as follows:

A.    An order certifying this action to proceed as a class action under Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class Representatives, and appointing the undersigned as Class Counsel;

B.      A judgment awarding Plaintiffs and the Class actual damages in an amount equal to the amount of interest payments made for violating the interest provision of the MLA;

C.      A judgment declaring that Defendants' timeshare contracts fail to provide any MAPR disclosure in violation of the MLA;

D.      A judgment declaring that Plaintiffs' and the Class Members' timeshare Agreements are void from inception because they violate the MLA and award Plaintiffs and the Class the equitable, declaratory and injunctive relief set forth in 10 U.S.C. § 987 and/or 10 U.S.C. § 987(5)(A)(iii);

E.      A judgment awarding Plaintiffs and the Class reasonable attorneys' fees and litigation costs incurred in this action pursuant to 10 U.S.C. § 987(f)(5)(B);

F.      A judgment awarding Plaintiffs and the Class all pre-judgment and post-judgment interest recoverable at law or in equity; and

G.      A judgment awarding Plaintiffs and the Class such other and further relief to which they are justly entitled.

## JURY TRIAL DEMAND

Plaintiffs and the Class demand a jury trial on all issues so triable.

Respectfully submitted,

*(signature page to follow)*

**MOTLEY RICE LLC**
*s/ Anne M. Kearse*
Anne M. Kearse (D.S.C. ID No. 7570)
Marlon E. Kimpson (D.S.C. ID No. 7487)
M. Nolan Webb (D.S.C. ID No. 13948)
28 Bridgeside Blvd.
Mt. Pleasant, S.C. 29464
Telephone: (843) 216-9000
akearse@motleyrice.com
mkimpson@motleyrice.com
nwebb@motleyrice.com

**VARNELL & WARWICK, P.A.**
Janet R. Varnell; FBN: 0071072*
Brian W. Warwick; FBN: 0605573*
Christopher J. Brochu; FBN: 1013897*
400 N. Ashley Drive, Suite 1900
Tampa, Florida 33602
Telephone: (352) 753-8600
Facsimile: (352-504-3301
jvarnell@vandwlaw.com
bwarwick@vandwlaw.com
cbrochu@vandwlaw.com
jnewsome@vandwlaw.com
plevinson@vandwlaw.com
ckoerner@vandwlaw.com
service@vandwlaw.com

**EDELSON LECHTZIN, LLP**
Eric Lechtzin, PA Bar 62096*
411 S. State Street, Suite N-300
Newtown, PA 18940
Phone: 215-867-2399 ext. 1
Email: elechtzin@edelson-law.com

**\*Pro Hac Vice Application Forthcoming**

*Counsel for Plaintiffs and the Putative Class*

Date: December 15, 2025